IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Reginald C. Sweat, #257472, | ) | CIVIL ACTION NO: 9:11-1706-JMC-BM |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Warden Cecilia Reynolds and Ms. Christina Long, in their official and individual capacities | ) | |
| Defendants. | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on November 23, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 29, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on December 5, 2011, as well as a declaration of disputed facts on December 9, 2011 (Court Docket No. 59), a second response in opposition to the Defendants' motion on December 14, 2011 (Court Docket No. 62), additional materials on January 5, 2012 (Court Docket No. 72), another declaration on February 1, 2012 (Court Docket No. 94), and a statement of undisputed facts on February 8, 2012

- 1 -



(Court Docket No. 97). Plaintiff also filed his own motion for summary judgment on January 30, 2012. Defendants filed an additional affidavit on February 7, 2012 (Court Docket No. 96).

These motions are now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified complaint[2] that he is an inmate at the Kershaw Correctional Institution (KCI), part of the South Carolina Department of Corrections. Plaintiff alleges that on November 24, 2010, he was placed in the same room with his "pursuer" following a riot between Muslims and Folkgang members. Plaintiff acknowledges that he and another inmate named James Furlow "was the primary inmates responsible for the fighting." Plaintiff alleges that the Defendant Long, a case worker at the prison, read him a copy of the report of the incident which stated that he and Furlow were named as the leaders of the two parties. Plaintiff alleges that he then informed Long that he and Furlow were being housed in the same room, and that if he was assaulted he "would sue". Nevertheless, Plaintiff alleges that for two months, and despite numerous letters being written to the Defendant Reynolds (the Warden), a Chaplin and a psychiatrist stating that both Plaintiff and Furlow wanted to be separated, he was "assaulted on three occasions by a much larger James Furlow."

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. All parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Plaintiff alleges that after the first assault he spoke with Associate Warden "Washington" and informed him that he had been assaulted by Furlow, and that Washington said he would have Plaintiff moved; however, Plaintiff alleges that he "stayed in the room" as everyone continued to ignore his complaints. Plaintiff alleges that his placement in a cell with Furlow by an administration that "knew of a risk to [his] health and safety" showed deliberate indifference to a known risk of harm to him. Plaintiff further alleges that he was "told the reason why I was placed in the room with James Furlow is because officers who make money bringing in contraband has informed inmates that I am a whistle blower and needed to be dealt with." Plaintiff also alleges that certain inmates have been given access to contraband, such as cell phones, "in exchange for an [ ] assault on my life . . . ."

Plaintiff alleges that the Defendant Warden Reynolds is the "final decision maker", and that she "signed off" for Plaintiff to remain in his cell even though she knew that to do so risked Plaintiff's safety. Plaintiff also complains that he has been labeled the leader of the "five percenters", but that this is incorrect because he has been a Muslim since 1999 and no "five percenters" were involved in the riot. Plaintiff seeks monetary damages for a violation of his constitutional rights, and that he no longer be "labeled the leader of the five percenters . . . ." See generally, Verified Complaint, with attached exhibits.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Ann Hallman, Branch Chief for the Inmate Grievance Branch, in which Hallman attests that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.[3]

---

[3]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the
(continued...)



Attached to Hallman's affidavit as Exhibits A and B are copies of Plaintiff's Step 1 and Step 2 Grievances. Hallman further attests that Plaintiff was transferred back to the general population on or about July 8, 2011, and is therefore no longer housed with Furlow.

The Defendants have also submitted an affidavit from Christine Long, a Classification Case Manager at KCI, who attests that Plaintiff was housed within the Special Management Unit (SMU) at KCI from November 24, 2010 through his release to the general population on or about July 8, 2011. Long attests that following a review by the Institution Classification Committee on November 30, 2010, Plaintiff was approved for housing with another inmate already housed within the SMU and transferred to SMU Cell 13th with inmate James Furlow. Long attests that from her review of the inmates' institutional records, she is satisfied that Plaintiff's cell assignment within the SMU on November 30, 2010 was proper and within the bounds of SCDC policy and procedure. Long further attests that on December 3, 2010, the Security Detention Board evaluated Plaintiff's classification status as well as the allegations of gang activity noted in the Incident Report (attached to her affidavit), and determined that Plaintiff should be placed on security detention status within the SMU until July 8, 2011, when he was released back into the general population. See generally, Long Affidavit, with attached exhibits.

The Defendants have also submitted an affidavit from Jason Hall, who attests that he

---

³(...continued)
alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. A final decision on the Step 2 appeal constitutes exhaustion of the prison administrative procedure. See Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).



- 4 -

was a correctional officer working with the KCI Special Management Unit during the time period alleged in the Complaint. Hall attests that inmate Furlow remained in the same cell with the Plaintiff within the Special Management Unit from November 30, 2010 through February 8, 2011, and that he is not personally aware of any altercation reports or threats of a potential altercation, physical or otherwise, between the Plaintiff and inmate Furlow during their time housed together in the Special Management Unit. See generally, Hall Affidavit.

An affidavit from Pamela Phillips, a nurse at KCI, has also provided, in which Phillips attests that she has reviewed Plaintiff's medical records from November 2010 through July 2011 (an accurate summary of which is attached to her affidavit as exhibit A). Phillips attests that Plaintiff did not report to medical with any allegations of assault or injuries caused by an assault from November 2010 through July 2011. See generally, Phillips Affidavit, with attached medical records.

In opposition to the Defendants' motion for summary judgment and in support of his own motion for summary judgment, Plaintiff has submitted copies of the SCDC Policy and Procedure relating to the Inmate Disciplinary System (Docket No. 59-1), copies of the Incident Report (also provided as an exhibit by the Defendants) dated November 24, 2010 and a Request to Staff Member dated February 15, 2011 (Court Docket No. 59-2), a copy of selected pages from his medical summary (Court Docket Nos. 62-1 and 72-1), copies of his grievance documents as well as another copy of the Incident Report (Court Docket No. 92-1), and a portion of Phillips' Affidavit with an attachment (Court Docket No. 92-2).

A copy of a tape recording of a hearing has also been provided, which (although of poor quality) the Court has reviewed. This appears to be a recording of a hearing presided over by



Long, at which Plaintiff complains about being housed with Furlow. Long appears to indicate that the matter will be reviewed.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Defendants initially argue in their motion, inter alia, that this case should be dismissed for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the



enactment of this statute, Congress has mandated exhaustion regardless of the relief offered through administrative procedures. Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the administrative remedies that were available to him at the prison.

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 127 S.Ct. 910 (2007). To meet this burden, the Defendants have submitted the affidavit from Ann Hallman, who attests that Plaintiff did not exhaust his administrative remedies through completion of the appeal of his Step 2 grievance.[4] Specifically, Hallman attests that Plaintiff filed a Step 1 grievance concerning his cell placement with inmate Furlow on February 8, 2011, which was reviewed and denied on March 9,

---

[4] While Defendants further contend that, in order to completely exhaust his administrative remedies, Plaintiff was required to file an appeal of any denial of his Step 2 grievance to the State Administrative Law Court, Plaintiff was not required to appeal a denial of his Step 2 grievance to the Administrative Law Court in order to exhaust his administrative remedies for purposes of this lawsuit, as conditions of confinement claims, such as is being asserted here, do not require exhaustion past the Step 2 institutional level. See Johnson v. Ozmint, 567 F.Supp.2d 806, 820, n.5 (D.S.C. 2008); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007).



2011.  See also, Hallman Affidavit, Exhibit A [Step 1 Grievance]. Hallman attests that Plaintiff then filed a Step 2 grievance appeal with the Division Director of Operations on March 10, 2011, but that Plaintiff's Step 2 grievance had not been ruled upon prior to the filing of this lawsuit.  See also, Hallman Affidavit, Exhibit B [Step 2 Grievance]; Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."].

For his part, Plaintiff does not dispute that he did not exhaust his administrative remedies prior to filing this lawsuit.  In his verified complaint, Plaintiff acknowledges that there is a prison grievance procedure at KCI, that the filed a grievance concerning the claims asserted in his Complaint, and that at the time of the filing of the Complaint he had not yet received a final Agency/Departmental/Institutional answer or determination concerning this matter. See Complaint, Section II.  Plaintiff further states in his Complaint that while he did complain to institutional authorities concerning the subject of his grievance, the results were "futile".  However, this is not a sufficient argument for failure to exhaust administrative remedies.  See Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility].

In his objection to the Defendants' motion for summary judgment (Court Docket No. 53), Plaintiff argues that although he did not fully exhaust his administrative remedies, he did "substantially" comply with the exhaustion requirements, and that this case should not be dismissed on exhaustion grounds because he "made a good faith effort" to exhaust his remedies prior to filing this lawsuit.  However, a "good faith effort" is not what is required.  Bridgeforth v. Workman, 410



Fed. Appx. 99, 100-101 (10th Cir. 2010)[Mere "good-faith efforts to comply with grievance procedures . . . do [ ] not excuse failure to exhaust."]. Nor does Plaintiff's claim in his Complaint that he was faced with an immediate risk of harm absolve him of his requirement to exhaust his remedies.[5] Cf. Arbuckle v. Bouchard, 92 F.Appx. 289, 291 (6th Cir. 2004)["[Plaintiff's] argument that he was not required to exhaust his administrative remedies because he faced a risk of immediate harm is without merit. The PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury"]; Jones v. Bates, No. 08-545, 2012 WL 43464, at * 3 (N.D.In. Jan. 6, 2012)["[E]ven imminent danger does not excuse the failure to exhaust administrative remedies tailored to imminent dangers"] (internal quotations omitted); Severson v. Igbinosa, NO. 10-2217, 2011 WL 870895, at * 3 (E.D.Ca. Feb. 18, 2011)["There is no exception to the exhaustion requirement for imminent harm"].

In sum, the evidence before the Court shows that Plaintiff did not properly file, pursue and exhaust a grievance concerning the issues raised in this case prior to filing this lawsuit. Cannon, 418 F.3d at 719 [Prisoner may not file a lawsuit before exhausting his administrative remedies]. This evidence is sufficient to meet the Defendants' burden of establishing Plaintiff's failure to exhaust his administrative remedies. Anderson, 407 F.3d at 683. Therefore, the Defendants are entitled to summary judgment on Plaintiff's claims. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]; Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court

---

[5]The Court further notes that, when this action was filed, Plaintiff had not been cell mates with Furlow for approximately five months. Hallman Affidavit.

- 9 -



- or any other to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)).

**II.**

Notwithstanding the finding set forth hereinabove, the Court is constrained to note that approximately four months had elapsed from the time Plaintiff filed his Step 2 grievance appeal and the filing of this lawsuit on July 15, 2011.[6] While Plaintiff has not specifically argued that this period of delay excuses Plaintiff's failure to exhaust his administrative remedies, an inordinate delay in responding to a grievance may under some circumstances allow for a prisoner to proceed with a lawsuit. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]. Therefore, out of an abundance of caution, the undersigned will also proceed to address Plaintiff's claim on the merits.

With respect to the merits of Plaintiff's claims, as employees of the Department of Corrections, the Defendants are both subject to suit for damages under § 1983 in their individual capacities. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir.

---

[6]The SCDC inmate grievance policy time limits provide that the Division Director of Operations has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance unless a 90-day extension is granted. See S.C.C.C. Inmate Grievance Policy; see also Stokes v. Ozmint, No 10-1535, 2010 WL 2853910 at * 1 (D.S.C. June 29, 2010), aff'd, 2010 WL 2853907 (D.S.C. July 19, 2010). No evidence has been presented that an extension was granted in this case.


1977).  Construed liberally, Plaintiff is seeking damages against these Defendants in their individual capacities.  Nonetheless, after careful review of the filings in this case as well as the arguments of the parties, the undersigned finds and concludes that Plaintiff's claims are without merit, and that the Defendants are therefore entitled to summary judgment.

Plaintiff claims that the Defendants put his personal safety at risk by housing him with inmate James Furlow.  Prison officials may be liable under the Eight Amendment if they are deliberately indifferent to a known risk of harm to an inmate.  See Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. Jul. 7, 2003)[Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim], cert. denied, 2004 WL 232748 (4th Cir. 2004); Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety].  In order to meet this standard, Plaintiff must demonstrate both that he was detained or incarcerated "under conditions posing a substantial risk of serious harm"; Brown v. Harris, 240 F.3d 383, 388-389 (4th Cir. 2001), quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); and that the offending official(s) had "a sufficiently culpable state of mind".  Farmer, 511 U.S. at 834.  In other words, a prison official cannot be found liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference".  Farmer, 511 U.S. at 837.  The evidence before the Court is not sufficient to give rise to a genuine issue of fact that either named Defendant was deliberately indifferent to a known risk of harm to the Plaintiff.

The evidence before the Court, considered in the light most favorable to the Plaintiff,



is that Plaintiff complained about being in a cell with Furlow, and that he made his complaint known to several individuals within the prison, including the Defendants. However, while Plaintiff complained to Long at a hearing and in his grievance that he was "placed in the room with the very person I was to be separated from . . . .", other than Plaintiff's own general and conclusory assertion that he should not have been placed in the cell with Furlow, there is no evidence whatsoever to show that Furlow was a danger to the Plaintiff, had ever made any threats against the Plaintiff, that it had ever been determined that Plaintiff and Furlow should not share a cell, or indeed that Furlow ever carried out any threats or acts of violence against the Plaintiff while they were housed in the same cell. While Plaintiff points to the Incident Report of November 23, 2010 (Exhibit B to Long's Affidavit) as identifying both he and Furlow as "leaders of the gang fight" that had occurred, there is no indication in this document that any of the four inmates identified in that document could not be housed together, or indeed what particular gang they are alleged to have belonged to. The Defendants have also submitted copies of Plaintiff's cell assignment documentation, none of which reflect any security concerns regarding his placement in a cell with Furlow, nor do they reflect any threats Plaintiff had received or any physical violence Plaintiff had endured at the hands of Furlow or anyone else. See Long Affidavit, Exhibits A, C - F.

Long has submitted an affidavit in which she attests that Plaintiff's situation was reviewed by the Institution Classification Committee on November 30, 2010 as well as by the Security Detention Board on December 3, 2010, both of which approved Plaintiff's classification and housing in the SMU. Further, Jason Hall, who worked as a correctional officer in the SMU during the relevant time period, attests that Plaintiff and Furlow remained in the same cell within the SMU from November 30, 2010 through February 8, 2011, and that he is aware of no altercation



reports or threats of a potential altercation, physical or otherwise, between the Plaintiff and Furlow during that time. Plaintiff's medical summaries also confirm that, notwithstanding Plaintiff's claim that he was "assaulted" three times by Furlow,[7] Plaintiff was never seen in medical for injuries received as a result of any alleged assault, even though he regularly received medical care during that period of time. See Phillips Affidavit, Attached Exhibit A. While Plaintiff has submitted copies of these medical summaries with circles and/or notations drawing attention to specific entries which, Plaintiff asserts, support his claim that he had been assaulted, none of this evidence indicates that Plaintiff had suffered any type of assault. Rather, these exhibits reflect that Plaintiff was seen in the medical office complaining of joint and back pain caused by degenerative joint disease and arthritic changes. See Plaintiff's Exhibits (Court Docket Nos. 62-1, 72-1); see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

In sum, the evidence reflects that Plaintiff did not want to be housed in a cell with inmate James Furlow and submitted requests and grievances seeking to be moved to a different cell, arguing that he and Furlow were a danger to each other and should not be housed together. However, Plaintiff has no constitutional right to pick his cell mate or decide where he will or will not be housed. Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest

---

[7]The Court is constrained to note that in his Step 1 grievance, filed on February 8, 2011 (the date after which Plaintiff no longer shared a cell with Furlow), Plaintiff only alleges that several "pushing and shoving matches" had occurred. See Defendant's Exhibit A to Hallman's Affidavit. The Court also notes that in his grievance Plaintiff concedes that after he wrote to the Warden on February 3, February 4, and February 5 [see Defendant's Exhibit A to Hallman Affidavit], Plaintiff was moved on February 8, 2011.



in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."].  While the Defendants cannot be deliberately indifferent to a known risk of serious harm to an inmate, there is no evidence before the Court to show that Furlow was in fact a danger to the Plaintiff, that Furlow ever made any threats against the Plaintiff, that Furlow in fact ever assaulted the Plaintiff, or that either named Defendant in this case was "aware of facts from which the inference could be drawn that a substantial risk of serious harm [to the Plaintiff] exists[ed][or drew] the inference". Farmer, 511 U.S. at 837. See also A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]; Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997)[Even actions that in hindsight are "unfortunate" or "imprudent" will not suffice to demonstrate deliberate indifference].  Hence, even assuming for purposes of summary judgment that Plaintiff did actually fear that Furlow might attack him, such a concern is insufficient in and of itself to establish a failure to protect claim.  In addressing a similar claim, the United States District Court for the Southern District of Mississippi held:

> In Plaintiff's case he was transferred from EMCF, and away from the inmates he feared, before any harm occurred.  The Court finds that the mere fear of an attack happening is insufficient to establish a failure-to-protect claim.  Plaintiff was not injured and has suffered no damages.  Any damages resulting from his mental distress for being worried about being attacked are not cognizable under the law.



Regardless of whether his fears were justified, there can be no constitutional violation if he was not harmed.

Singleton v. Horne, No. 9-55, 2011 WL 3290356 at * 3 (S.D.Miss. Aug. 1, 2011).

Therefore, even assuming Plaintiff can be deemed to have exhausted his administrative remedies with respect to this claim prior to filing this lawsuit, the evidence presented is not sufficient to create a genuine issue of fact as to whether either named Defendant was deliberately indifferent to a known risk of substantial harm to the Plaintiff. This claim is subject to dismissal.

### **Conclusion**

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment be **granted**, and that this case be **dismissed,** without prejudice, for failure of the Plaintiff to exhaust his administrative remedies. Jones v. Bock, 549 U.S. at 204. Alternatively, if the Court determines that the delay in resolving Plaintiff's Step 2 grievance appeal is sufficient to allow Plaintiff to proceed with this claim, then in that event it is recommended that summary judgment be **granted** for the Defendants, with prejudice. Plaintiff's motion for summary judgment should be **denied**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 10, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

